UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YAHAMA C. RODGERS,

                              Plaintiff,

         v.                                                    6:04-CV-770
                                                                      (J. Hurd)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LEGAL SERVICES OF CENTRAL        CHRISTOPHER CADIN, ESQ.
  NEW YORK, INC.
Attorney for Plaintiff

GLENN T. SUDDABY                     WILLIAM H. PEASE
United States Attorney for the           Assistant U.S. Attorney
  Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

REPORT-RECOMMENDATION

     This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

# PROCEDURAL HISTORY

Plaintiff filed an application for Supplement Security Income (SSI) benefits on April 12, 2001 (Administrative Transcript ("T") at 16, 23, 51-53, 65). The application was denied initially on September 10, 2001. (T. 1, 24-27).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on November 20, 2002 . (T. 16-22). The ALJ found that the plaintiff was not disabled. (T. 16-22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on May 6, 2004. (T. 5-8).

Plaintiff filed another application for SSI benefits on October 29, 2003, and was awarded benefits after a hearing, by a decision dated October 29, 2004. (Plaintiff's Brief, p. 1, fn. l). A copy of the favorable decision is attached to plaintiff's brief as Exhibit A. The ALJ who heard plaintiff's October 2003 claim found no basis on which to reopen the 2001 claim which is the subject of this case. In the instant case, plaintiff seeks benefits for a **closed time period** from April 12, 2001 to October 29, 2003.

# CONTENTIONS

The plaintiff makes the following claims:

2

(1) The Commissioner's determination is not based on substantial evidence in the record. (Brief, p. 7).

(2) The ALJ erred in failing to use a Vocational Expert (VE) since plaintiff's work capacity is significantly diminished by her mental impairments. (Brief, p. 13).

(3) The ALJ failed to give proper weight to the opinions of plaintiff's treating physicians. (Brief, p. 18).

(4) The ALJ erred in his determination that plaintiff's complaints were not fully credible. (Brief, p. 19).

## FACTS

This court adopts the facts contained in the plaintiff's brief under the heading "Statement of Facts" on page 2 of plaintiff's brief, to the extent that those facts are consistent with the facts stated in this Report-Recommendation.

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

1. **<u>Scope of Review</u>**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2. Medical Evidence

At the time of her hearing before the ALJ in November of 2002, plaintiff was 25 years old and had a tenth grade education. Two years earlier during November of 2000, plaintiff sought mental health treatment because of severe depression and other troubling thoughts about harming herself or others. (T. 95-97). Plaintiff sought treatment from an organization in Utica, New York known as Mental Health Connections (MHC). (T. 178). Plaintiff also sought assistance from another organization known as Human Technologies Corporation Behavioral Health Services (BHS). (T. 80). When plaintiff first sought treatment she had three young children ages 7, 3 and less than 1 year. (T. 82). Both of these agencies treated plaintiff for her mental problems although it is sometimes unclear in the record which documents belong to MHC or BHS. It is clear, however, that

plaintiff sought and received treatment from psychiatrists, a registered nurse, social workers, and counselors. (T. 78-80, 82-97, 130-144, 147-163). Plaintiff had two treating psychiatrists, Dr. Jehangir Kotwal, who diagnosed plaintiff as having a Bipolar Disorder which was severe (T. 82), and Dr. Uma Mannava, who diagnosed plaintiff as having a Major Depressive Disorder, recurrent and severe, with psychotic features. (T. 170). Dr. Kotwal prescribed two medications, Lithium Carbonate and Zyprexa. (T. 84).

Other mental health providers classified plaintiff as having a Learning Disorder, Post-Traumatic Stress Syndrome, Major Depression (T. 168); Dysthymic Disorder (T. 147, 152); and Borderline Personality Disorder (T. 147).

The record is clear that plaintiff had major periods of severe mental dysfunction, yet the ALJ in this case quotes selected and largely irrelevant parts of the record, stating that plaintiff's main problem seems to be "... current lack of friends ..." (T. 18), and that plaintiff had "... **only minor mental limitations**..." (T. 19).

The record does show that when plaintiff began her mental health treatment, she did miss several appointments and canceled other appointments, so that the first treating agency discharged her from treatment. (T. 90, 130). She did return, however, and sought treatment for her severe mental problems, including severe

Bipolar Disorder, severe depression with psychotic features, and Dysthmic Disorder. (T. 147-150, 95-98, 151-156).

During February of 2004, plaintiff's counsel submitted additional mental health treatment records to the Appeals Council. (T. 161-164). Those records confirm plaintiff's prior diagnoses and give important **additional** information about plaintiff's mental condition, specifically that plaintiff was under extreme emotional distress, causing the plaintiff, in the opinion of a treating psychologist, to have a moderate impairment for general functioning. (T. 168). The psychologist, Jacqueline Santoro, did extensive psychological testing and found plaintiff to have a low average I.Q., a Learning Disorder, a Chronic Post-Traumatic Stress Disorder, and a Severe Major Depression which was recurrent and which had psychotic features. (T. 166-168). Dr. Santoro's recommendation was that plaintiff should not be working. (T. 169).

The records submitted by Dr. Uma Mannava gave a similar diagnosis as other treating mental health professionals, and specifically stated that the plaintiff "cannot work at this time". (T. 170). Dr. Mannava's report was dated January 10, 2003.

An undated letter from Bernadette McDaniel, a Social Worker with Mental Health Connections, also forwarded to the Appeals Council during February of

2004, stated the diagnoses given by that agency of Bipolar Disorder and Personalty Disorder, and also gave her opinion that any employment for plaintiff should be deferred. (T. 178).

### 3. Treating Physician Rule

The medical conclusions of a treating physician are controlling if well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). *See also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998); *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999). An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d at 79 (citations omitted). If the treating physician's opinion is not given "controlling weight," the ALJ must assess the following factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6); 416.927(d)(2-6). Failure to follow this standard is a failure to apply the proper legal standard and is grounds for reversal. *Barnett v.*

*Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998) (citing *Johnson v. Bowen*, 817 F.2d at 985).

The ALJ in this case did not follow this circuit's Treating Physician Rule. The ALJ did not cite to the pertinent reports and findings of plaintiff's treating physicians and other professionals, all of whom found that plaintiff had a severe mental depression which was recurrent and had psychotic features. (T. 97   ). The ALJ's reference on page 3 of his decision (T. 18) to a main issue of plaintiff having a difficulty with alcohol is incorrect and misplaced. More importantly, however, the ALJ's finding that plaintiff had "... only minor mental limitations which would allow entry-level, nonstressful jobs" (T. 19) is incorrect, since plaintiff's treating psychiatrists, treating social workers, and other mental health professionals **all** found that she had a Major Depression which was recurrent with psychotic features, and had many other mental problems, including impulse control (T. 88) and severe problems with interpersonal relations resulting in the possible harm to others and possible harm to herself. (T. 69, 95, 130).

While the ALJ who rendered a favorable decision in October of 2004 had additional and different evidence before him, that ALJ did correctly recite plaintiff's mental health history on pages 2 through 5 of his decision which is attached to the plaintiff's brief as Exhibit A.

**4. <u>Vocational Expert</u>**

If a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986).  If the plaintiff's range of work is significantly limited by her non-exertional impairments, then the ALJ must present the testimony of a vocational expert or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.*  A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

In this case, the ALJ found that plaintiff did not have significant mental dysfunction, and that finding is erroneous as stated above.  The ALJ also found that plaintiff did not have any nonexertional impairments and utilized the Medical-Vocational Guidelines.  (T. 21 - Finding #13).  Plaintiff's limitations are almost *entirely* nonexertional and stem from her serious mental problems and therefore, a

VE was necessary to determine whether plaintiff could perform work with the serious mental limitations that she had.

## 5. Medical-Vocational Guidelines

In this case the ALJ incorrectly used the Medical-Vocational Guidelines since it is clear that plaintiff has significant mental limitations which are nonexertional. The ALJ's use of the Medical-Vocational Guidelines was error.

## 6. Remand or Reversal

When there are gaps and inconsistencies in the administrative record, with no sufficiently complete proof that the plaintiff is disabled, the appropriate relief is remand for further or proper evaluation of the record. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

While the ALJ that decided plaintiff's November of 2003 application did have additional evidence, plaintiff's serious mental condition existed since November of 2000. The records in this case document mental dysfunction which made it almost impossible for plaintiff to function in a work environment involving other people. The record contains substantial evidence that plaintiff was disabled between April 12, 2001 and October 29, 2003.

**WHEREFORE,** based upon the findings in the above Report, it is hereby

**RECOMMENDED,** that this case be **reversed** for an award of benefits for a closed period of April 12, 2001 to October 29, 2003.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 23, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge